UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| THOMAS SANCHEZ, JR. and DANIEL CRISP, <br><br>*Plaintiffs*, <br><br>v. <br><br>GREAT AMERICAN INSURANCE CO., <br><br>*Defendant*. | § § § § § § § § § § § <br><br> Civil Action No. SA-18-CV-804-XR |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

On this date, the Court considered Defendant's motion for summary judgment (docket no. 44), Plaintiffs' response (docket no. 52), Defendant's reply (docket no. 53), and Plaintiff's sur-reply.[1] After careful consideration, Defendant's motion is GRANTED.

**BACKGROUND**

Plaintiffs Thomas Sanchez, Jr. ("Sanchez") and Daniel Crisp ("Crisp") filed this action against the insurer Great American Insurance Company ("Defendant"), asserting claims arising out of an automobile accident with an underinsured motorist on May 17, 2016. Docket no. 3. At the time of the accident, Plaintiffs were in an automobile insured under a policy issued to Plaintiffs' employer, Goodwill Industries of San Antonio, that included uninsured/underinsured (UM/UIM) coverage (the "Policy").

After the accident, Plaintiffs both obtained medical treatment at Concerta Medical Center ("Concerta"). Both continued treatment there until they were released for full duty after reaching "maximum medical improvement." *See* docket no. 52-1 at 168 (releasing Crisp); no. 52-2 at 334,

---

[1] Plaintiffs' motion for leave to file the sur-reply (docket no. 54) is GRANTED.

357 (releasing Sanchez). Plaintiffs, however, continued to experience pain from their injuries and sought additional treatment, eventually resulting in surgeries for both Plaintiffs. Thereafter, Plaintiffs requested and received permission from Defendant to settle any and all claims with the alleged tortfeasor, Yuri Unterreiner, for the limits of his automobile liability insurance policy. That claim settled for $30,000, and Defendant authorized the settlement on January 26, 2017. Docket no. 44-7 at 2; no. 44-8 at 3. Plaintiffs alleged that their damages exceeded the settlement obtained through the tortfeasor's insurer, ultimately demanding that Defendant settle Sanchez's claim for $750,000.00 (docket no. 44-10 at 3) and Crisp's claim for $2,500,000.00 (docket no. 44-9) at 7.

Defendant requested that Plaintiffs provide copies of their medical records to the workers' compensation insurance carrier, Texas Mutual Insurance Company ("Texas Mutual"). Docket no. 44-11; no. 44-12. Defendant further requested that Plaintiffs provide a letter of rejection or denial if Texas Mutual denied Plaintiffs' claims for reimbursement coverage because two provisions of the Policy limit Defendant's coverage when the insured also receives workers' compensation reimbursement. The uninsured/underinsured ("UM/UIM") provision contained an explicit exclusion denying coverage where the payment would directly or indirectly benefit a workers' compensation insurer like Texas Mutual. Docket no. 44-2 at 9–10 ("This coverage shall not apply directly or indirectly to benefit…[a]ny insurer or self-insurer under any workers' compensation, disability or similar law."). The Policy further included a Limit of Insurance stating that "[i]n order to avoid insurance benefits in excess of actual damages sustained, [Defendant] will pay all covered damages not paid or payable under any…workers' compensation, disability benefits or similar law…." *Id.* at 10.

Thereafter, on June 26, 2018, Plaintiffs brought suit against Defendant in the 224th District Court of Bexar County, Texas, asserting contractual and extra-contractual claims based on

Defendant's alleged denial of UM/UIM benefits. Docket no. 1-3. The case was timely removed to this Court on the basis of diversity jurisdiction on August 3, 2018. Docket no. 1. In April 2019, the parties agreed that Plaintiffs would dismiss their contractual and extra-contractual claims against Defendant. Docket no. 28. Plaintiffs' Amended Complaint, then, seeks only "a declaration of the rights of the parties to the policy of insurance" and all other benefits due under the policy. Docket no. 30 at 3.

On June 17, 2019, Defendant asked the Court to abate the case for sixty days. Docket no. 35. Defendant sought the abatement so that Plaintiffs could seek reimbursement from their workers' compensation carrier and provide proof in writing to Defendant, such that the condition precedent to Defendant's contractual obligations was met. *See* docket no. 35. On August 7, the Court granted that motion. Docket no. 43. In its order, the Court agreed with Defendant that Plaintiffs had failed to clarify the extent to which their medical expenses had been or might be paid by Texas Mutual. *Id.* at 6. Accordingly, the Court abated the case for sixty days "to allow Plaintiff[s] to obtain a final determination from Texas Mutual Insurance Company on workers' compensation benefits." *Id.* at 7. Four months later, Defendants filed the instant motion for summary judgment. After seeking leave to file a late response, Plaintiffs responded to that motion on April 6, 2020, and Defendant filed its reply on April 20. Docket nos. 52–53.

## DISCUSSION

### I. Standard of Review

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear

3

the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the non-movant's claim or defense. *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the movant carries its initial burden, the burden shifts to the non-movant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof…that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the non-movant, or, in other words, that the evidence favoring the non-movant is insufficient to enable a reasonable jury to return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the non-movant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may

4

not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the non-moving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

**II.     Analysis**

The issue before the Court is whether Defendant is contractually obligated to pay UM/UIM benefits. Defendant's arguments in support of its motion are the same as before the case was abated: Defendant is not yet obligated to pay because it must first receive proof that there is no coverage available under a workers' compensation policy, a condition precedent to its obligation to pay. Docket no. 44-1 at 8. Defendant argues that despite the abatement, Plaintiffs have still not submitted proof that Texas Mutual denied or rejected coverage and, accordingly, have failed to meet the necessary condition precedent. *Id.* at 9. Indeed, Defendant argues, it has never denied coverage under the UM/UIM endorsement but is instead merely waiting on Plaintiffs to provide it with information concerning Texas Mutual's coverage decisions or payments.

Plaintiffs respond with two exhibits: one 762-page exhibit and another 829-page exhibit. Plaintiffs claim that Texas Mutual has paid $1,083.20 for Crisp's treatment and $1,410.69 for Sanchez's treatment and "has denied all other submitted medical billing." Docket no. 52 at 3. Plaintiffs assert that "[t]here is nothing further payable from workers' compensation insurance and, thus, there are no further offsets from any third-party insurance that will ameliorate Defendant's obligation under its UIM policy." *Id.* at 4. Defendant's reply argues that Plaintiffs' voluminous evidence—produced over eight months since the Court abated the case—still does not show a final determination from Texas Mutual, instead showing that Texas Mutual maintains secured liens against both Plaintiffs, confirming that payment of UM/UIM benefits would go to Texas Mutual's benefit, in contravention of the Policy's exclusion of payments that would benefit workers'

5

compensation insurance carriers. Docket no. 53 at 1–3. Defendant argues that Plaintiffs are merely hypothesizing that Texas Mutual would decline any further coverage because the Concerta doctors previously found Sanchez and Crisp had reached maximum medical improvement. *Id.* at 3.

The Court must "apply Texas law as interpreted by Texas state courts." *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 593 (5th Cir. 2011). Under Texas law, insurance policies are interpreted "according to common principles governing the construction of contracts, and the interpretation of an insurance policy is a question of law for a court to determine." *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 562 (5th Cir. 2010). At bottom, the Court must interpret the contract to discern the intention of the parties as it is expressed in the policy. *Id.*

In general, the insured bears the initial burden of establishing that coverage is potentially provided by the applicable insurance policy, while it is the insurer's burden to prove the applicability of an exclusion permitting it to deny coverage. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 350 (5th Cir. 2005) (applying Texas law); *see also* TEX. INS. CODE ANN. § 554.002. If the insurer is successful in meeting that burden, the burden shifts back to the insured to prove that the exclusion does not apply. *Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998).

Here, Defendant has met its burden of proving that an exclusion applies, and Plaintiffs have failed to meet their subsequent burden of proving that the exclusion does not apply. Defendant has clearly shown that two similar exclusions from the Policy apply: Defendant will only pay for damages "not paid or payable" from any workers' compensation payment. Docket no. 44-2 at 9–10. If Plaintiffs were to receive compensation from Texas Mutual, the workers' compensation insurance carrier, then Defendant will not pay that amount. The parties do not seem to dispute the

applicability of this exclusion, given that the dispute centers entirely on whether Plaintiffs have clarified the *extent* to which Plaintiffs have received or will receive workers' compensation payment, not whether any such payment in general may preclude payment from Defendant.

The burden, then, shifts back to Plaintiffs to prove the inapplicability of the exclusion. *Reyna*, 401 F.3d at 350. In its order granting abatement, the Court found that Plaintiffs had failed to clarify the extent to which their medical expenses may be paid by Texas Mutual. Docket no. 43 at 6. Nothing in the interim has offered further clarification. On August 23, 2019, Plaintiffs' counsel sent a letter to a representative at Texas Mutual regarding both Sanchez and Crisp, asking for confirmation that Texas Mutual approved payment for treatment at Concerta but denied payment for any billing from all other providers. Docket no. 52-1 at 11. Plaintiffs' counsel requested a response by August 29 so that "we can avoid the need for your deposition." *Id.* Plaintiffs have not pointed to—nor has the Court found in its search through over 1,500 pages of medical records and correspondences—any response, nor have the parties indicated that anyone from Texas Mutual was deposed in response to their lack of confirmation.[2]

Because the burden of proving the inapplicability of an exclusion is one which Plaintiffs would bear at trial, Defendant need only point to a lack of evidence on the issue. *Lavespere*, 910 F.2d at 178. It has done so. The Court cannot assume that "in the absence of any proof," Plaintiffs "would prove the necessary facts" to meet their burden. *Morris*, 144 F.3d at 380; *Little*, 37 F.3d at 1075. Nor is unsupported speculation that Texas Mutual would not pay anything further sufficient to defeat summary judgment. *Brown*, 337 F.3d at 541. The Court, therefore, must grant summary

---

[2] The Court, in its own search through Plaintiffs' exhibits, also discovered an email from Joyce Bernal with Texas Mutual to Plaintiff's counsel in June 2017. Docket no. 52-2 at 327. In that email, the Texas Mutual adjuster explains the process by which Plaintiffs' counsel should receive confirmation of the extent of the compensable injury. She remarks that they "would need to provide [Defendant] with a signed authorization for them to submit to Texas Mutual along with their request." There is no indication in the summary judgment record that Plaintiffs' counsel pursued this.

7

judgment because Plaintiffs have not shown the inapplicability of the exclusion. Plaintiffs have not shown that they are entitled to any benefits at this time.

## CONCLUSION

In conclusion, Defendant has met its burden of proving the applicability of the exclusion limiting insurance payments where payments are also made or are payable by a workers' compensation insurance carrier, and Plaintiffs have failed, in turn, to meet their burden of proving the inapplicability of that exclusion. Accordingly, Plaintiffs have not shown—at this time—that they are entitled to any benefits. For that reason, Defendant's motion for summary judgment (docket no. 44) is GRANTED. This case is DISMISSED WITHOUT PREJUDICE.  The Clerk shall enter a final judgment pursuant to Rule 58 and shall CLOSE this case.

It is so ORDERED.

SIGNED this 29th day of April, 2020.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE